# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**GENE A. YOUNGBLOOD, individually
and as Chairman of the Board/Pastor of
FIRST CONSERVATIVE BAPTIST CHURCH
OF JACKSONVILLE FL. INC., and FIRST
CONSERVATIVE BAPTIST CHURCH OF
JACKSONVILLE FL. INC.,
a Florida not-for-profit corporation,**

      Plaintiffs,

**v.**                        **CASE NO. 3:01-cv-1449-J-16MCR**

**STATE OF FLORIDA, STATE OF FLORIDA
DEPARTMENT OF HEALTH, an agency/political
subdivision of the State of Florida;
JAMES SLIVA, as an individual and/or as an
agent/employee of State of Florida Department of Health;
WILLIAM NOWLIN, as an individual and/or as an
agent/employee of State of Florida Department of Health;
ADELINE DOBSON, as an individual and/or
as an agent/employee of State of Florida Department of Health;
CITY OF JACKSONVILLE, FLORIDA; DAVID BOYD,
as an individual and/or as an agent/employee of
City of Jacksonville, Florida; ROBERT BUTLER,
as an  individual and/or as an agent/employee of
City of Jacksonville, Florida; CHUCK PERRETT,
as an individual and/or as an agent/employee of
City of Jacksonville, Florida;**

      Defendants**.**
_____/

## O R D E R

      Before the Court are Defendants James Sliva, Adeline Dobson and William Nowlin's

("Defendant Health Inspectors") Dispositive Motion for Summary Judgment (Dkt. 81), Defendant

State of Florida Department of Health's[1] Dispositive Motion for Summary Judgment (Dkt. 82) and

Defendants City of Jacksonville, Florida, David Boyd, Roger Butler and Chuck Perrett's Motion for

Summary Judgment (Dkt. 86). Various exhibits were attached to each of these Motions (Dkts. 83-

87). The Plaintiffs filed memoranda of law in opposition (Dkts. 92-94) and attached multiple

exhibits in support (Dkts. 98-119).

## I.        Procedural Posture

Plaintiff Gene A. Youngblood ("Plaintiff Youngblood") is Chairman of the Board and Pastor

of Plaintiff First Conservative Baptist Church of Jacksonville Florida, Inc. On or about December

26, 2001, Plaintiffs filed their Verified Complaint ("Complaint")(Dkt. 1) with claims seeking

compensatory damages, declaratory and injunctive relief, based on both the Florida and United

States Constitutions. The Defendants involved include the Duval County Health Department

("Health Department") along with Health Department employees James Sliva, William Nowlin and

Adeline Dobson, who are being sued in both their official and individual capacities. The other

Defendants include the City of Jacksonville, Florida and City employees David Boyd, Roger Butler

and Chuck Perrett, who are also being sued in both their official and individual capacities.

The twelve counts in the Complaint allege the following: violation of the right to free

exercise of religion under the United States Constitution (Count I); violation of the right to equal

protection under the United States Constitution (Count II); violation of the right to equal protection

under the Florida Constitution (Count III); violation of the right to free exercise of religion under

the Florida Constitution (Count IV); violation of the right to due process under the Florida

Constitution (Count V); unlawful search and seizure under the Florida Constitution (Count VI);

---

[1] Defendant Department of Health provides its proper title is Duval County Health Department.

violation of the right to privacy under the Florida Constitution (Count VII); violation of the right to free exercise of religion under the Florida Religious Freedom Restoration Act (Count VIII); negligent supervision and retention against Defendants State of Florida, Duval County Health Department and the City of Jacksonville (Count IX); unlawful search and seizure under the United States Constitution (Count X); violation of due process rights under the United States Constitution (Count XI); and civil conspiracy against Defendants Sliva, Nowlin, Dobson, Boyd, Butler and Perrett (Count XII).

On or about April 22, 2002, several Defendants filed Motions to Dismiss the Complaint (Dkts. 5-7) and on March 17, 2005, the Court entered an Order (Dkt. 51) dismissing certain aspects of the Complaint. All Defendants now move for Summary Judgment. For purposes of clarity, the specific counts remaining against each Defendant will be set forth in the applicable sections below.

## II.    Background

The Plaintiffs' First Conservative Baptist Church is located at 12021 Old St. Augustine Road, Jacksonville, Florida. This property contains a school, the Conservative Christian Academy, for the religious training of children. For the school to operate and provide a food service, the Plaintiffs applied for and received the necessary permits. In applying for such permits, the Plaintiffs agreed to submit to regular inspections by Defendant Health Department pursuant to Florida Statute § 381.001 *et seq.*, Florida Administrative Code 64E-11, 13. On or about May 2, 2001, Health Department inspector James Sliva ("Defendant Sliva") was inspecting the kitchen and lunchrooms of the building that housed the school. A door at the end of the lunchroom was allegedly open and appeared to lead to a playground (Dkt. 86 at 1). Defendant Sliva contends he walked out to inspect the playground when Plaintiff Youngblood allegedly ordered him off the property before he had

3

completed his inspection. Id. at 2.

Defendant Sliva subsequently informed his supervisor, Adeline Dobson ("Defendant Dobson"), of his inability to finish the inspection (Dkt. 81 at 3). Although Defendant Sliva's inspection report provides the inspection was satisfactory, it also notes that "Dr. Youngblood said it is not our jurisdiction to check [the] outdoor play area." (Dkt. 86, Exhibit 3, attachment). Defendant Dobson decided to discuss the matter with her supervisor, Gale Tucker. Ms. Tucker believed they should be able to complete the inspection of the classrooms and the playground and she also allegedly wanted to learn which classrooms and playground were being utilized (Dkt. 81 at 4). Ms. Tucker thought Defendant Sliva, Defendant Dobson and Defendant William Nowlin ("Defendant Nowlin"), the Health Department's enforcement officer, should return together to complete the inspection. She brought this to the attention of her supervisor, Dr. Aaron Hilliard, Director of Environmental Health and Safety. Ms. Tucker alleges they were only interested in inspecting the school, not private church property. Dr. Hilliard agreed and approved this request.

On May 9, 2001, Ms. Tucker wrote a letter to Plaintiff Youngblood advising him that inspectors would be returning to finish the inspection. Ms. Tucker enclosed a copy of the applicable Florida Administrative Code. Plaintiff Youngblood telephoned Defendant Department of Health and allegedly told Ms. Tucker that the inspectors were not welcome to return. As a result, Ms. Tucker asked Dr. Hilliard for permission to contact the Jacksonville Sheriff's Office ("JSO") in order to have an officer accompany the inspectors for peacekeeping purposes. Dr. Hilliard agreed and Defendant Nowlin contacted William Glen Brown, the Coordinator for Inter-Agency Special Investigations for the Jacksonville Sheriff's Office ("JSO"), and requested a police officer accompany the Department of Health inspectors pursuant to Florida Statute § 381.0012(5). Mr.

Brown then spoke with Mr. Larry Pritchard, the Police Legal Advisor for the JSO, and learned an officer could accompany the inspectors to keep the peace, so Mr. Brown contacted Detective Camille Perrett ("Defendant Perrett"). Mr. Brown asked Defendant Perrett to contact Defendant Nowlin and accompany the inspectors when they returned to the Plaintiffs' property.

On or about May 16, 2001, Defendant Perrett agreed to meet Defendants Sliva, Dobson and Nowlin ("Defendant Health Inspectors") at the property.   En route Defendant Perrett allegedly called the dispatcher and requested another officer join him at Plaintiffs' property as Defendant Perrett was not wearing a JSO uniform (Dkt. 86, Exhibit 10, ¶7). Officer David Boyd ("Defendant Boyd"), who apparently had no prior knowledge of the situation, met Defendant Perrett at Plaintiffs' property. The Defendant Health Inspectors and Defendants Perrett and Boyd allegedly approached the building where the school was located. These Defendants met Plaintiffs' wife, Dorothy Youngblood, who did not want to allow an inspection of the building until her husband  arrived. While waiting for Plaintiff Youngblood, Defendant Boyd called his supervisor, Sergeant Roger Butler ("Defendant Butler"), as he anticipated difficulties and wanted a supervisor present. When Plaintiff Youngblood did arrive, he did not allow the inspection to occur.

Defendant Butler then arrived and after being informed of the situation, allegedly told Plaintiff Youngblood that he believed the inspectors had the authority to conduct the inspection. Defendant Butler provides he believed the inspectors only wanted to inspect areas used for the school (Dkt. 86, Exhibit 12, ¶5).  Plaintiff Youngblood continued to refuse to allow the inspection and he was thus informed by Defendant Butler that he could be subject to arrest. In lieu of physical arrest, however, Defendant Butler would only ask Plaintiff Youngblood to sign a Notice to Appear ("NTA") citation pursuant to Florida Statute § 381.0025(2). As Plaintiff Youngblood continued to

refuse to allow the inspection, Defendant Butler instructed Defendant Boyd to issue the citation. Defendants Butler and Boyd determined they had probable cause to issue the NTA citation based upon the refusal of Plaintiff Youngblood to allow the inspection to occur. Shortly thereafter, Defendants Boyd and Butler as well as Defendant Health Inspectors, left Plaintiffs' property.

## III.    Standard of Review

The Court should grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact [such] that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987); Edwards v. Acadia Realty Trust, Inc., 141 F. Supp. 2d 1340, 1344-45 (M.D. Fla. 2001).  The Court will construe the record and all inferences that can be drawn from it in the light most favorable to the nonmoving party, and the moving party bears the initial burden of establishing the absence of a genuine material fact.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Samples on Behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Once this burden is met, however, the opposing party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 342.  The Eleventh Circuit explained in Samples that the opposing party need only present evidence from which a jury might return a verdict in its favor in order to survive the moving party's motion for summary judgment.  See Samples, 846 F.2d at 1330; see also Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

Notably, the Supreme Court pointed out in Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986), that the moving party's burden only extends to facts that might affect the outcome of the lawsuit under the governing law, as "[f]actual disputes that are irrelevant or unnecessary will not be counted."    Summary judgment will only be granted if all facts and inferences point overwhelmingly in favor of the moving party, such that a responsible jury could not find in favor of the opposing party.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  If there is conflicting evidence that will permit differing reasonable inferences, the case will be submitted to the jury.  See Augusta Iron & Steel, 835 F.2d at 856.

**IV.    Discussion**

**A.    Defendant Health Department**

The Court notes the only relief afforded by the remaining claims against Defendant Health Department, Counts I-VII, X, XI, is for injunctive and declaratory relief. For Count VIII, Plaintiffs' claims for injunctive and declaratory relief as well as the claims for attorney's fees and costs are still viable. Defendant Health Department moves for summary judgment arguing such relief is inappropriate as Plaintiffs lack Article III standing under the United States Constitution.

Specifically, Defendant Health Department asserts that a declaratory judgment may only be issued if there is an actual controversy. See Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985)(noting "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative injury. The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments.")(internal citations omitted). Defendant Health Department provides that since the alleged May 16, 2001 incident, it has inspected Plaintiffs' premises at least eight times without issue with the inspections occurring at least twice annually through 2005 (Dkt.

82 at 2). Moreover, that Plaintiff Youngblood has acknowledged there have not been any problems with the Defendant Health Department since the alleged incident (Dkt. 86, Exhibit 14-i, Deposition of Plaintiff Youngblood at 57).  Based upon the fact that for more than four years the inspections have been uneventful, Defendant Health Department argues the likelihood of future discrimination is "conjectural, hypothetical, or contingent" and not "real and immediate." Accordingly, Defendant Health Department asserts Plaintiffs request for declaratory judgment is improper.

As to the Plaintiffs' request for injunctive relief, Defendant Health Department argues because injunctive relief regulates future conduct, a party seeking such relief has to allege "'a real and immediate. . .threat of future injury.'" Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)(quoting Wooden v. Board of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1284 (11th Cir. 2001)). Defendant Health Department asserts no threat exists and contends this is supported by the eight inspections that have occurred without incident. Defendant Health Department therefore argues the requested injunctive relief is not warranted and that because the Plaintiffs lack standing to sue for injunctive or declaratory relief, summary judgment is appropriate.

Plaintiffs respond that Defendant Health Department fails to recognize the legal differences in the standards for injunctive and declaratory relief. Plaintiffs note the Defendants remain ignorant as to which property constitutes church property and which is school property. This ignorance continues to subject Plaintiffs to further irreparable injury. Plaintiffs also note that because Defendant Sliva has not inspected the property since May 16, 2001, this does not eliminate the existence of a case or controversy. Instead, Plaintiffs argue Defendant Sliva is only prevented from returning to the property on account of Ms. Tucker's direction. Plaintiffs provide that on November 27, 2001, Defendants Sliva and Nowlin did return to the property and "demanded to inspect the

8

church's private property." (Dkt. 1, ¶ 61).   Consequently, Plaintiffs argue that Defendant Health Department's Motion for Summary Judgment (Dkt. 82) should be denied.

**B.**     **The Court's Analysis**

Federal courts are required by Article III of the United States Constitution to decide only "cases" or "controversies." This requirement necessitates a federal court exercise jurisdiction only when "the plaintiff has suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action challenged and is likely to be redressed by a favorable decision." Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 617 (9th Cir. 1999)(citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)("The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts."). In other words,  "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)(internal citations omitted). Because Plaintiffs are seeking both declaratory and injunctive relief, the Court will address each in turn. Zwickler v. Koota, 389 U.S. 241, 254 (1967)(noting "that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction.").

**i.**     **Declaratory Judgment**

The Declaratory Judgment Act ("the Act") provides, in pertinent part, that in "a case of actual controversy within its jurisdiction," a court may "declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239-40 (1937)(noting the actual controversy requirement in the Act is the same as the requirement of Article III of the United States Constitution). Under the facts alleged, therefore, a threshold requirement is that there be a substantial continuing controversy. Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995)("the threshold question is whether a justiciable controversy exists.")(internal citations omitted). See U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991). Whether a controversy exists is determined on a case-by-case basis. Caulkins, 931 F.2d at 747.

Plaintiffs' Complaint alleges declaratory judgment is necessary "to determine the constitutionality of the actions under the Policy [Florida Administrative Code, Chapter 64E-13, hereinafter the "Policy"] and of Defendants' actions in denying Plaintiffs the opportunity to [be] free from state harassment in exercising" their rights "and to declare Defendants' challenged actions under the challenged Policy unconstitutional as applied." (Dkt. 1, ¶1). While Defendant Health Department contends no actual controversy exists, Plaintiffs allege the challenged activity of attempting to search private church property and then arresting individuals who refuse equates to such a controversy. See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974)(providing that declaratory relief is appropriate when "the challenged government activity. . .is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.").

After considering the parties' arguments and submitted documentation, the Court agrees with Defendant Health Department. The core of Plaintiffs contentions is that Defendant Health

Department "has repeatedly attempted to inspect the church's private property without first obtaining a warrant." (Dkt. 92 at 11). Plaintiffs allege this occurred on both May 16, 2001 and November 27**,** 2001 and the fact that at least eight inspections through 2005 have occurred without incident is irrelevant as there is nothing preventing the Defendant Health Department from repeating its allegedly unlawful behavior. The Court recognizes that the passage of time does not preclude the behavior from repeating itself, however, the Court does not find issuing a declaratory judgment to be appropriate. See U. S. v. State of Wash., 759 F. 2d 1353, 1357 (9th Cir.)(en banc)("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.")(internal citations omitted); Aetna Life, 300 U.S. at 241 (controversy must be "real and substantial. . .admitting of specific relief through a decree of conclusive character"). The challenged Policy clearly does not authorize the inspection of private church property. Based upon the foregoing, summary judgment in favor of Defendant Health Department as to the claims for declaratory relief in Counts I-VIII, X, XI should be granted.

## ii.    Injunctive Relief

Defendant Health Department asserts because the inspections have occurred without incident up through 2005, any future threat of injury is hypothetical. Shotz, 256 F.3d at 1081. Plaintiffs respond that while Defendant Health Department has voluntarily decided not to attempt any search of the church's private property without a warrant, this voluntary cessation can end at any point. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); U.S. v. W.T. Grant Co., 345 U.S. 629, 632 (1953).

Upon review of the record, the Court agrees with Defendant Health Department as the Court does not find the alleged threat to be "real and immediate." Shotz, 256 F.3d at 1081. Instead, the Court finds the threats outlined by Plaintiffs against Defendant Health Department to be conjectural and hypothetical. As a result, summary judgment as to the claims for injunctive relief in Counts I-VIII, X, XI should be granted.

## C.   Defendant Officers

The federal claims remaining against Defendants Boyd, Butler and Perrett ("Defendant Officers") are Counts I, X-XII. The state claims in Counts IV-VII, VIII remain against Defendant Officers but only to the extent the claims are seeking equitable relief. Count VIII also affords the possibility of attorney's fees and costs.  The federal claims will first be examined.

### a.   The Federal Claims and Qualified Immunity

Defendant Officers, as employees of the City of Jacksonville, contend they are entitled to qualified immunity as to the Section 1983 claims. They argue that the defense of qualified immunity protects "government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Eleventh Circuit provides that the defense of qualified immunity protecting government officials is the "usual rule. . . [and] only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A&M University, 28 F.3d 1146 (11th Cir. 1994); See Hope v. Pelzer, 536 U.S. 730 (2002); Gonzalez, 325 F.3d at 1233 (noting the purpose of the immunity is to protect "'from suit all but the plainly incompetent or one who is knowingly violating

12

the federal law.'")(internal citation omitted).

In order to receive qualified immunity, the government official "must first prove he was acting within his discretionary authority." Gonzalez, 325 F.3d at 1234 (internal citations omitted). If the public official establishes this requirement, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)(internal citation and quotation marks omitted). To determine if the plaintiff met this burden, the Supreme Court has provided a two-part test for qualified immunity analysis: (1) "'[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right'" and (2) "if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then consider 'whether the right was clearly established.'" Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003)(internal citation omitted). If no constitutional violation is established, then the officer prevails and no further inquiry is required. Id. "On the other hand, if the facts establish a constitutional violation, we must determine whether, at the time of the violation, the right was clearly established, an inquiry that 'must be undertaken in light of the specific context of the case [and] not as a broad general proposition. . . .'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

The Court initially finds that it is undisputed that Defendant Officers were acting within the scope of their discretionary authority during the alleged incident. The next step for the Court to determine is whether the facts alleged show the officer's conduct violated a constitutional right. As to Counts I (violation of right to free exercise of religion) and XI (violation of due process rights), the Court finds that Defendant Officers' conduct did not violate Plaintiffs' constitutional rights. Even assuming the Defendant Officers were attempting to search Plaintiffs' private property without

13

a warrant and issued a citation to Plaintiff Youngblood for his refusal to allow the search, the Court does not find such conduct supports the claims alleged in Counts I and XI. Moreover, if Plaintiffs had presented sufficient facts to allege a violation of a constitutional right, such a right in this case was not clearly established. See Storck, 354 F.3d at 1317 (providing a party may show that the law was established by pointing to (1) "'a materially similar case [that has] already decided that what the police officer was doing was unlawful'" or by "(2) demonstrating that 'the words of the pertinent federal statute or federal constitutional provision. . .[are] specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity," despite no applicable case law.) (internal citations omitted). The Court also finds summary judgment is appropriate for Counts I and XI to the extent the claims seek equitable relief as any future threat of injury is hypothetical.

As to Count X (unlawful search and seizure), Plaintiffs argue the Defendant Officers knew, or reasonably should have known, that the Fourth Amendment prevents entry into private property without a warrant. See Camara v. Mun. Court of the City & County of San Francisco, 387 U.S. 523, 534 (1967)(holding administrative searches "are significant intrusions upon the interests protected by the Fourth Amendment. . . ."). Specifically, that Defendant Officers "used threats of arrest and incarceration if Plaintiff Youngblood prevented the officers entry into the church's private property without a warrant." (Dkt. 93 at 17). Plaintiffs contend the law regarding search warrants is fundamental instruction during an officer's basic training and that because the law is well-established, the Defendant Officers knew, or reasonably should have known, their actions violated the law.

Defendant Officers, however, argue that the only act Plaintiffs could conceivably challenge

is the issuance of the Notice to Appear citation. Defendant Officers contend that even if the Court finds Defendants Boyd and/or Butler did not have probable cause to issue the citation, the officers only needed arguable probable cause. Storck, 354 F.3d at 1315. Defendant Officers provide they knew the Defendant Health inspectors only wanted to inspect school facilities and Defendant Butler contends he believed Plaintiff Youngblood understood the same (Dkt. 86, Exhibit 11, Declaration of Boyd, ¶ 3; Exhibit 12, Declaration of Butler, ¶ 5). Defendant Officers argue they reasonably could have believed Plaintiff Youngblood's refusal to allow the inspection of the school facilities constituted a violation of Florida Statute § 381.0025.

Taking the facts alleged in the light most favorable to the Plaintiffs, that Defendant Officers "used threats of arrest and incarceration if Plaintiff Youngblood prevented the officers' entry into the church's private property without a warrant," the Court finds this would constitute a violation of Plaintiffs' constitutional right (Dkt. 93 at 17). For the next step, examining whether the right was clearly established, the Court must make an inquiry "in light of the specific context of the case [and] not as a broad general proposition. . . ." Storck, 354 F.3d at 1314 (internal citations omitted). The Court recognizes that administrative searches are subject to the warrant requirement of the Fourth Amendment. Camara, 387 U.S. at 538-40. The Court also recognizes that the administrative search warrant requirement is clearly established constitutional law. In this instance, however, the Court finds an examination of the administrative search warrants to be a "broad general proposition" as opposed to the specific context of this case. The record reflects Defendant Officers believed they had the legal authority to assist the Defendant Health Inspectors conduct their inspection of the school facilities and that it was a misdemeanor to refuse to allow the inspection (Dkt. 86, Exhibit 11, Declaration of Boyd, ¶ 3; Exhibit 12, Declaration of Butler, ¶ 3-4). The Court does not find

15

therefore that reasonable officers in Defendant Officers' position would know, or should know, that such actions are violative of a clearly established right. As a result, the Court finds Defendant Officers are entitled to qualified immunity. See Storck, 354 F.3d at 1317-18 ("Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.")(internal citations omitted). The Court also finds that Plaintiffs are not entitled to declaratory or injunctive relief under Count X as such a controversy is not real and immediate. Emory, 756 F.2d at 1552.

Moreover, to the extent Plaintiffs are contesting the Notice to Appear citation, the Court also finds Defendants Boyd and Butler entitled to qualified immunity. See Storck, 354 F.3d at 1315 (officers "are entitled to qualified immunity if there was [even] *arguable* probable cause for arrest.")(internal citations omitted). See L.S.T., Inc. v. Crow, 49 F.3d 679, 684 (11th Cir. 1995). "Arguable probable cause exists when 'an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" Storck, 354 F.3d at 1315 (internal citation omitted). Based upon the review of the record, the Court finds Defendants Boyd and Butler had arguable probable cause to issue the Notice to Appear citation to Plaintiff Youngblood.

**b.     Civil Conspiracy Claim**

Defendant Officers contend that Plaintiffs claim of civil conspiracy (Count XII) fails under both 42 U.S.C. § 1985(3) and § 1983. Specifically, that under § 1985(3), a plaintiff must allege that a conspiracy existed that was motivated by some class based, invidiously discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)("The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."). Furthermore, that

16

pursuant to 42 U.S.C. § 1983, a plaintiff must make particularized allegations of the existence of a conspiracy. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998); Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)("To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants 'reached an understanding to violate [his] rights.'")(quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988). Conversely, Plaintiffs argue that Defendants discussed arresting Plaintiff Youngblood before they even arrived on his property (Dkt. 93 at 16)(citing Plaintiffs' Exhibit 9 at 158-161). Plaintiffs further contend that Defendants conferred together and agreed that if the inspection was not permitted, Dorothy Youngblood would be arrested. When Plaintiff Youngblood arrived, Defendants allegedly conferred again and decided to arrest him via a Notice to Appear citation.

Upon review, the Court agrees with Defendant Officers and does not find evidence that the parties reached an understanding to violate Plaintiffs' rights. See Rowe, 279 F.3d at 1284 ("For a conspiracy claim to survive a motion for summary judgment "[a] mere 'scintilla' of evidence. . .will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'"(citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)); Crow, 49 F.3d at 682 n.4 ("To state a claim under [42 U.S.C. § 1985(3)], a plaintiff must allege "that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action[.]'")(internal citation omitted).  Instead, the Court finds that Defendant Nowlin and Defendant Perrett spoke prior to meeting at the Plaintiffs' property in order to coordinate their arrival times (Dkt. 86 at 19, Exhibit 10, ¶¶ 6-8; See Exhibit 7-i at 50-51). Defendants Boyd and Butler declared they first learned of Defendant Health Department's prior inspections once they arrived at Plaintiffs'

17

property on May 16, 2001 (Dkt. 86, Exhibit 11, Declaration of Boyd, ¶ 3; Exhibit 12, Declaration of Butler, ¶ 3-4). Moreover, that Defendant Butler instructed Defendant Boyd to issue the Notice to Appear citation based upon what the Defendant Officers had witnessed. Accordingly, the Court finds summary judgment as to Count XII in all respects for Defendant Officers to be proper.

**c.     State Claims against Defendant Officers**

For the remaining state claims against Defendant Officers, Counts IV-VII, VIII, it appears these claims only afford relief of an equitable nature. While the Court will examine Counts IV-VII together, Count VIII will be analyzed separately and below.

In examining declaratory relief, the Court previously outlined that the threshold question is whether a justiciable controversy exists. Aetna Life, 300 U.S. at 241; Atlanta Gas Light Co., 68 F.3d at 414. For Counts IV (violation of free exercise of religion under Florida Constitution), V (violation of due process under Florida Constitution), VI (unlawful search and seizure under Florida Constitution) and VII (violation of right to privacy), the Court does not find the threshold requirement to have been met and thus declaratory relief is not warranted. Similarly, the Court does not find injunctive relief to be appropriate as Plaintiffs have failed to demonstrate "'a real and immediate. . .threat of injury.'" Shotz, 256 F.3d at 1081. Christopher v. Dep't of Highway Safety and Motor Vehicles, 209 F. Supp. 2d 1290, 1292 (S.D. Fla. 2001)("When a victim of alleged police misconduct seeks an injunction prohibiting future misconduct, his standing depends on a showing that he faces a real and immediate threat that he will again suffer from the misconduct.")(internal citations omitted).

For Plaintiffs' claim of a violation of the right to free exercise of religion under FRFRA (Count VIII), Defendant Officers initially contend that they are not properly named in their

18

individual capacities as the statute does not permit such a claim. See Busby v. City of Orlando, 931

F.2d 764, 772 (11th Cir. 1991); De Armas v. Ross, 680 So.2d 1130 (Fla. 3rd DCA 1996).  Moreover,

assuming the claim is proper, Defendant Officers assert Plaintiffs have not demonstrated how

Defendant Officers substantially burdened their exercise of religion. See Warner v. City of Boca

Raton, 887 So.2d 1023, 1033 (Fla. 2004).  After considering these arguments, the Court agrees with

Defendant Officers. The Court finds Plaintiffs are neither entitled to declaratory or injunctive relief

nor to attorney's fees and costs as to Count VIII. Summary Judgment should therefore be entered

in favor of Defendant Officers as to Counts IV-VIII. .

**D.      Defendant Health Inspectors**

        For the federal claims remaining against Defendants Sliva, Dobson and Nowlin ("Defendant

Health Inspectors"), Counts I, II, X-XII, the Court previously assumed Plaintiffs were seeking relief

against the officials in their individual capacities. Indeed, the Court outlined "[t]he Plaintiffs may

not seek compensatory relief against the Defendants acting in their official capacities. . . ." (Dkt. 51

at 20). As to the remaining state claims, Counts III-VII, VIII, they offer equitable relief in the form

of an injunction or declaratory decree. Count VIII also has the claim for attorney's fees and costs.

The Court will begin with an examination of Plaintiffs' request for monetary relief under the federal

claims and then address the requests for injunctive and declaratory relief.

**a.      The Federal Claims and Qualified Immunity**

        Defendant Health Inspectors, similar to the Defendant Officers above, argue they are entitled

to summary judgment based upon their qualified immunity from suit as to the federal claims in the

Complaint. These Defendants assert it is undisputed they were acting in their discretionary authority

as Health Department employees. See Gonzalez, 325 F.3d at 1233. Upon meeting this requirement,

Defendant Health Inspectors argue Plaintiffs are unable to demonstrate their conduct violated a constitutional right and that the right was clearly established. Storck, 354 F.3d at 1314.

### i.    Count I

As to Count I (violation of free exercise of religion), Defendant Health Inspectors assert that when they returned to the premises on May 16, 2001, it is undisputed they never specifically requested to inspect "church" property (Dkt. 81 at 14)(citing Deposition of Plaintiff Youngblood , Sept. 20, 2005 at 51-53; Deposition of Dorothy Youngblood, Sept. 20, 2005 at 35-37; Deposition of Defendant Sliva at 70-71; Deposition of Defendant Dobson at 84; Deposition of Defendant Nowlin at 61, 64). They provide this contention is supported by Plaintiff Youngblood's admission that none of the inspectors, on May 16, 2001, demanded to him they be allowed to inspect the church's private property (Deposition of Plaintiff Youngblood, Sept. 20, 2005 at 63-64). Defendant Health Inspectors instead assert they were seeking to enforce their statutorily mandated duty under Florida Statute § 381. This statute, they argue, is a neutral policy of general applicability and does not burden the free exercise of religion. Warner v. City of Boca Raton, 420 F.3d 1308, 1310 (11th Cir. 2005). Defendant Health Inspectors further provide that Plaintiffs were on notice of the limited nature of the inspection due to Gale Tucker's May 9, 2001 letter. Accordingly, Defendant Health Inspectors argue there is no evidence they intentionally sought to obtain warrantless entry to church property on May 16, 2001.

Plaintiffs respond that the issue is that Defendants did demand inspection of private property, without a warrant, and indeed arrested Plaintiff Youngblood for refusing to allow it to occur. Plaintiffs emphasize that Defendants did violate Plaintiffs' free exercise rights by requiring Plaintiffs to either "forfeit their ministry or submit to the unconstitutional warrantless searches of private

property." (Dkt. 94 at 8).

Upon review of these arguments, the Court finds that to the extent Plaintiffs are seeking monetary relief against Defendant Health Inspectors under Count I, summary judgment in favor of these Defendants based upon qualified immunity is proper. It is clear to the Court that Defendant Health Inspectors were acting within the scope of their discretionary authority. Moreover, the Court finds Plaintiffs have not met their burden of demonstrating qualified immunity is not appropriate as the facts alleged do not show these Defendants' conduct violated Plaintiffs' right to free exercise of religion under the First Amendment. Ms. Tucker's May 9, 2001 letter informed Plaintiffs the inspectors would be returning as "[t]he inspection was left incomplete due to the fact that [Defendant] Sliva was not allowed to inspect neither [sic] the playground nor [sic] the classrooms." (Dkt. 81, Plaintiff Youngblood's Deposition, Sept. 20, 2005, Attachment #5). Plaintiff Youngblood also acknowledges that these Defendants did not demand to inspect the church property, but instead that they made the demand through two police officers. Id. at 63-64. As the Court previously noted, qualified immunity protects government officials "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gonzalez, 325 F.3d at 1233 (internal citations omitted). A reasonable government agent would not consider Defendants' conduct to constitute such a violation. Accordingly, to the extent Count I requests monetary relief, the Court finds summary judgment is proper.

**ii.    Count II**

Defendant Health Inspectors argue qualified immunity defeats the equal protection claim (Count II) as Plaintiffs have not demonstrated that their school has been inspected differently than any other private "church/school." (Dkt. 81 at 16)(citing Deposition of Plaintiff Youngblood, Sept.

20, 2005 at 60-61; Deposition of Dorothy Youngblood, Sept. 20, 2005 at 51). Conversely, Plaintiffs argue  Defendant Health Inspectors all testified that as a general rule, inspectors adhere to the explanation given as to which areas are used for school and those designated for church (Dkt. 94 at 9)(citing Plaintiffs' Exhibit 3 at 157, Exhibit 17 at 77-78, Exhibit 1 at 33-34). In this instance, Plaintiffs argue, Defendant Health Inspectors singled them out for different treatment and subjected them to threats of arrest after these Defendants were denied permission to conduct a warrantless inspection of private property.

After reviewing these arguments, the Court agrees with Defendant Health Inspectors. The Court finds these Defendants were acting within the scope of their discretionary authority and that Plaintiffs have not met their burden. Consequently, to the extent Plaintiffs are seeking monetary relief against Defendant Health Inspectors under Count II, summary judgment  in favor of these Defendants is appropriate.

### iii.    Count X

For Count X (unlawful search and seizure), Defendant Health Inspectors  assert they were acting pursuant to Florida Statute § 381 and Florida Administrative Code § 64E-11, 13 and that they were therefore authorized to conduct warrantless inspections of private school and food service facilities (Dkt. 81 at 16). Defendant Health Inspectors contend that Plaintiff Youngblood testified that neither Defendants Sliva, Dobson nor Nowlin made any demand on May 16, 2001 to inspect the private property of the church (Dkt. 81)(Deposition of Plaintiff Youngblood, Sept. 20, 2005 at 63).  Moreover, these Defendants assert nothing was searched or seized on May 16, 2001 as no inspection occurred. Id. at 68-71; (Deposition of Dorothy Youngblood, Sept. 20, 2005 at 40).

The Court notes the arguments raised by Plaintiffs in response are identical to those discussed in the Defendant Officers section and the Court does not feel it is necessary to provide a recapitulation. Rather, upon a review of the record, the Court finds Defendant Health Inspectors are entitled to qualified immunity. It is clear they were acting within their discretionary authority and it is "objectively reasonable" to believe they were acting within constitutional and statutory bounds. Natale v. Town of Ridgefield, 927 F.2d 101, 104-05 (2d Cir. 1991). As the Eleventh Circuit noted, "[i]f reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck, 354 F.3d 1307, 1314 (11th Cir. 2003). As a result, to the extent Plaintiffs are seeking monetary relief against Defendant Health Inspectors under Count X, summary judgment in favor of these Defendants is proper.

### iv.     Count XI

For Count XI (violation of due process rights), Defendant Health Inspectors generally reference that they are entitled to qualified immunity as their actions did not deny Plaintiffs' due process rights. Upon review of the record, the Court agrees. Specifically, the Court finds Defendant Health Inspectors were acting within their discretionary authority and that Plaintiffs have failed to demonstrate how qualified immunity is not appropriate. Summary judgment in favor of Defendant Health Inspectors is therefore warranted.

### b.     Civil Conspiracy Claim

Count XII alleges that Defendant Health Inspectors conspired with Defendant Officers to have Plaintiff Youngblood arrested. Defendant Health Inspectors, however, argue no such conspiracy existed as they never discussed the inspection with the Officer Defendants before arriving on the premises on May 16, 2001 (Dkt. 81)(citing Deposition of Defendant Dobson, August

23

2, 2005 at 108–09; Deposition of Defendant Nowlin, August 3, 2005 at 50-51; Deposition of

Defendant Sliva, August 3, 2005 at 71-72; Deposition of Defendant Boyd, August 8, 2003 at 54;

Deposition of Defendant Perrett, August 7, 2003 at 23). These Defendants assert they waited outside

while Defendant Officers and the Youngbloods spoke about the Notice to Appear ("NTA") citation

inside. Moreover, Defendant Health Inspectors assert the decision by Defendant Butler to instruct

Defendant Boyd to issue the citation was made without their input (Dkt. 81) (Deposition of

Defendant Butler, August 8, 2003 at 28-29, 35; Deposition of Defendant Nowlin, August 3, 2005

at 50-51; Deposition of Defendant Dobson, August 2, 2005 at 109-110; Deposition of Defendant

Sliva, August 3, 2005 at 72, 76-78; Deposition of Defendant Nowlin Affidavit ¶ 7; Defendant

Dobson Affidavit, ¶ 11; Defendant Sliva Affidavit, ¶ 11).

Plaintiffs respond that the facts demonstrate that Defendant Nowlin requested police

assistance from Mr. Glenn Brown, an interagency coordinator. Mr. Brown spoke with state attorney

Mr. Larry Pritchard and allegedly discussed the options if Plaintiffs refused to allow the inspection

to occur. Mr. Pritchard explained to Mr. Brown that a NTA could be issued (Plaintiffs' Exhibit 5,

Deposition of Laurence Pritchard, August 1, 2005 at 31; Plaintiffs' Exhibit 9, Deposition of

Defendant Perrett, August 7, 2003 at 158-61). As a result, Plaintiffs assert Defendants discussed the

arrest of Plaintiff Youngblood before arriving on the premises. See (Plaintiffs' Exhibit 14,

Deposition of Geoffrey Youngblood, September 20, 2005 at 24, 45).

Initially, the Court notes it has already addressed the requirements for this claim in Section

IV-C(b) for Defendant Officers. See Rowe, 279 F.3d at 1283. Nevertheless, a review of the record

demonstrates that the Defendants did not reach an understanding to violate Plaintiffs' rights. Id. at

1284. Accordingly, summary judgment as to Count XII is proper.

c.      **Injunctive and Declaratory Relief**

Defendant Health Inspectors, in addressing Plaintiffs claims for injunctive and declaratory relief, provide that none of them have attempted to inspect Plaintiffs' property since November 27, 2001 and that there is no indication any of these three Defendants will ever do so again (Dkt. 81 at 19). As a result, the likelihood of any future discrimination remains "conjectural, hypothetical, or contingent" and thus Plaintiffs' claims fail. Shotz, 256 F.3d at 1081. Plaintiffs respond that the challenged activity of attempting to search private church property "with threats of and actual arrest is not contingent, has not evaporated or disappeared." (Dkt. 94 at 19). Plaintiffs additionally note that Defendant Health Inspectors have not been trained on the need for inspection warrants and thus the injury will "most certainly" occur again. Id. at 20.

In Section VI-B, the Court outlined the requisites for obtaining declaratory and injunctive relief and the Court will use that section as a reference in the following analysis.  As to Plaintiffs' request for declaratory relief, the Court agrees with Defendant Health Inspectors and finds summary judgment is appropriate. Specifically, Plaintiffs' underlying concern is that these Defendants will again attempt to conduct an allegedly unlawful inspection of private church property, pursuant to Florida Administrative Code Chapter 64E-13, while threatening to arrest those that refuse such an inspection. Plaintiffs' Complaint is so broad, however, that it seeks declaratory relief for Counts I-VIII, X-XII. The Court does not find Plaintiffs have demonstrated how they are entitled to such relief. Consequently, to the extent Counts I-VIII, X-XII seek declaratory relief, summary judgment should be granted in favor of Defendant Health Inspectors.

For Plaintiffs' claims seeking injunctive relief, the Defendant Health Inspectors provide that they have not attempted to inspect Plaintiffs' property since November 27, 2001 and that "[t]here

is no indication that any of these three Defendants plan to inspect, or even set foot on, Plaintiffs' premises in the future." (Dkt. 81 at 19). After considering the parties' arguments, the Court agrees with Defendant Health Inspectors. Indeed, the Court does not find the threat of future injury to be real and immediate. Shotz, 256 F.3d at 1081. Accordingly, summary judgment for Plaintiffs' claims seeking injunctive relief should be granted in favor of Defendant Health Inspectors.

## E.      Defendant City of Jacksonville

Defendant City of Jacksonville ("Defendant City") did not file a motion to dismiss, thus all applicable claims against it are still pending before the Court. Defendant City therefore begins by arguing that it is entitled to summary judgment on the federal claims as Plaintiffs' constitutional rights were not violated.[2]

### a.      Municipal Liability

As an initial matter, the Court recognizes it is well established that municipalities may be sued under 42 U.S.C. § 1983 if "an official policy or custom of the municipality violates constitutional requirements." Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996). See Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978)( "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989)("*Respondeat superior* or vicarious liability will not attach under § 1983."). The Supreme Court has provided that "a

---

[2] Defendant City also argues that the Court should dismiss federal claims brought by the First Conservative Baptist Church due to a lack of standing. L.S.T., Inc. v. Crow, 49 F.3d 679, 682 n.6 (11th Cir. 1995)("A corporation is not a 'citizen' entitled to the privileges and immunities secured by federal law for purposes of § 1983.")(internal citations omitted). The Court agrees.

26

municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" Harris, 489 U.S. at 389. The Supreme Court continued that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. See Hill, 74 F.3d at 1152 ("Only those officials who have final policymaking authority may render the municipality liable under § 1983.").

Plaintiffs contend that they have alleged a policy or custom which resulted in their harm. Specifically, that pursuant to the Policy, Defendants believe they are authorized to demand a right of entry into any area the inspectors want to search and that when Plaintiff Youngblood refused this alleged right, he was arrested (Dkt. 93 at 14). Plaintiffs further contend the "deliberate indifference" standard is met here as "[i]t is beyond question" that if Defendants are sent to inspect private property they should be trained on the issue of obtaining an inspection warrant. Id. at 15.

The Court first notes that it did not find the Defendant Officers violated Plaintiff Youngblood's constitutional rights. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(holding municipal defendants "were sued only because they were thought legally responsible for [the individual officer's] actions; if the latter inflicted no constitutional injury. . .it is inconceivable that [the municipal defendants] could be liable [to the plaintiff]."). Nevertheless, even assuming such a constitutional deprivation, the Court does not find any evidence that Defendant City has an official policy or custom that violates constitutional requirements. Hill, 74 F.3d at 1152. The Policy referenced by Plaintiffs, Chapter 64E-13 of the Florida Administrative Code, is neither a policy of Defendant City nor does the Court find it to be a  "moving force" behind the alleged constitutional violations. Harris, 489 U.S. at 389. Additionally, as to the argument Defendant City

has exhibited a "deliberate indifference" in not training its officers on the issue of obtaining an inspection warrants, the Court disagrees. While Plaintiffs reference deposition testimony as support for this contention, the Court does not find evidence that Defendant City has demonstrated "'a deliberate indifference' to the rights of its inhabitants." Id.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)(noting that municipal liability under 42 U.S.C. § 1983 "'attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers. Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality. . . can a city be liable for such failure under § 1983."). As such, the Court finds Defendant City is entitled to summary judgment as to Counts I-II, X-XI to the extent these counts seek monetary relief.

The Court also finds Plaintiffs' request for declaratory and injunctive relief in Counts I-II, X-XI as to Defendant City to be without merit. While neither Plaintiffs nor Defendant City provided any substantive analysis on these issues, summary judgment is nevertheless appropriate. Specifically, for declaratory relief, the Court does not find the threshold requirement of a continuing controversy as to Defendant City to be met. Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995). Additionally, the Court finds the likelihood of future discrimination by Defendant City to be "conjectural, hypothetical, or contingent" and not "real and immediate" and that an injunction is not warranted. Shotz, 256 F.3d at 1081. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-113 (1983)(providing the plaintiff must  demonstrate any "real or immediate threat" of a recurrence of the alleged misconduct). Consequently, summary judgment is proper as to Counts I-II, X-XI.

**b.      State Claims against Defendant City of Jacksonville**

Defendant City moves for summary judgment as to the state claims in Plaintiffs' Complaint. The Court will discuss each claim in turn.[3]

i.      **Count IV**

Defendant City argues it did not violate Plaintiffs' right to free exercise of religion under the Florida Constitution (Count IV) for the same reasons it did not violate Plaintiffs' federal rights (Dkt. 86 at 14)(citing Warner v. City of Boca Raton, 64 F. Supp. 2d 1272, 1288 (S.D. Fla. 1999)("Florida courts have generally construed their state constitutional guarantees to be coextensive with their federal counterparts.")(internal citations omitted). Toca v. State, 834 So.2d 204, 208 (Fla. 2d DCA 2002). Specifically, that Defendant City's Officers only issued a Notice to Appear citation, pursuant to Florida Statute § 381.0025(2), for Plaintiffs failure to allow Defendant Health Inspectors to inspect the school. Defendant City further contends § 381.0025(2) is a neutral policy of general applicability and thus does not implicate the free exercise clause. Plaintiffs respond that the issue is not whether Florida Statute § 381.0025(2) is a law of general applicability and thus does not violate the free exercise clause, but rather that Defendants demanded, and ultimately arrested, Plaintiff Youngblood when he refused to allow inspection of private property without a warrant (Dkt. 93 at 12). Plaintiffs also argue their free exercise rights were violated by being required to either close the ministry or by submitting to unconstitutional warrantless searches of private property.

_____

[3] For Count III (violation of right to equal protection), the Court notes its previous Order (Dkt. 51) dismissed Plaintiffs' claims based on equal protection as to Defendant Officers. See (Dkt. 51 at 14, 16). Indeed, to the extent Count III sought monetary relief, the Court found the Plaintiffs failed to sufficiently allege any entitlement to private a cause of action under the Florida Constitution's guarantee to due process. The Court also found the equal protection claims (Counts II & III) to be vague and conclusory. As a result, the Court dismissed them as to Defendant Officers. Similarly, and for purposes of clarification, to the extent Count III remains viable against Defendant City, summary judgment in Defendant City's favor is proper for the same reasons expressed in the Court's prior Order (Dkt. 51).

After reviewing these arguments, the Court agrees with Defendant City. Indeed, the Court finds no genuine issue of material fact as to the alleged claim that Defendant City violated Plaintiffs' free exercise rights under the Florida Constitution (Count IV). The Court also notes that § 381.0025(2) is a neutral policy of general applicability and it does not implicate the free exercise clause. See Warner v. City of Boca Raton, 420 F.3d 1308, 1310 (11th Cir. 1999). Furthermore, the Court finds Plaintiffs' request for declaratory and injunctive relief to be without merit. Summary judgment as to Count IV should therefore be granted in favor of Defendant City.

**ii.     Count V**

Plaintiffs contend a violation of due process rights under the Florida Constitution (Count V) occurred "in that Defendants threatened arrest, and in fact arrested Plaintiff Youngblood, because he did not allow inspection of private church property without a warrant." (Dkt. 93 at 11). Plaintiffs continue that Defendants applied the "right of entry" language to enforce the Policy and arbitrarily arrested Plaintiff without affording any limitation as to the scope of the "right of entry." Id. at 11-12. Defendant City responds that Plaintiffs have failed to articulate whether they are alleging a violation of procedural or substantive due process. To the extent Plaintiffs allege a denial of procedural due process, Defendant City, in applying the federal standard to state due process claims, asserts such a claim "requires proof of three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." (Dkt. 86 at 10)(quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Defendant City further argues the Defendant Officers had probable cause to issue the Notice to Appear citation and that Plaintiff Youngblood was neither physically arrested or incarcerated. Moreover, after Plaintiff Youngblood appeared before a judge, the Notice to Appear citation was dismissed.

Based upon the foregoing, the Court does not find that Plaintiffs were denied due process under the Florida Constitution. See Florida Canners Ass'n v. State Dep't of Citrus, 371 So.2d 503, 513 (Fla. 2d DCA 1979), aff'd sub nom, 406 So.2d 1079 (Fla. 1981). Indeed, the Court finds the arguments articulated by Plaintiffs are difficult to discern and wholly fail to raise a genuine issue of material fact. The Court also finds that Plaintiffs are not entitled to declaratory or injunctive relief as the prerequisites have not been met. Accordingly, summary judgment as to Count V (violation of due process) in all respects is proper.

**iii.    Count VI**

Count VI alleges that Defendant City violated Plaintiffs' rights under the Florida Constitution by conducting an illegal search and seizure. Plaintiffs argue Defendants demand to inspect, and  their attempt to search, private property without a warrant was neither reasonable nor did it meet any exception to the requirements of the Fourth Amendment. Defendant City contends that  it did not conduct an unlawful search and seizure in violation of the Florida Constitution (Dkt. 86 at 13)(citing  Fla. Const. Art. 1, § 12, "This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."). Moreover, Defendant City contends nothing was searched or seized on May 16, 2001 and that "[i]t is beyond dispute that none of the Officer Defendants entered church property" on that day (Dkt. 86 at 9).

Before an individual can prevail on a fourth amendment claim, two requirements must be met. First, "there must be a search and seizure of that individual's person, house, papers or effects, conducted by an agent of the government; stated differently, there must be an invasion of the claimant's reasonable expectation of privacy." United States v. Bachner, 706 F.2d 1121, 1125 (11th

Cir. 1983)(internal citations omitted). The second requirement is that "the challenged search and seizure must be 'unreasonable,' as not all searches and seizures are proscribed by the fourth amendment, but only those that are 'unreasonable.'" Id.(quoting Elkins v. United States, 364 U.S. 206, 222 (1960)).  The individual asserting a violation of the fourth amendment has the burden of alleging, and if challenged, establishing these requirements. If an expectation of privacy is established, however, and the search and seizure took place without a search warrant, "then the burden of proof shifts to the state to establish that an exception to the search warrant requirement was applicable in the subject case and that the search and seizure was, in fact, a reasonable one." Id. at 1126 (citing Coolidge v. New Hampshire, 403 U.S. 443, 445 (1961)) (internal citations omitted).

Initially, the Court finds that Plaintiffs have a reasonable expectation of privacy as they own and operate a church and school on the property involved. Bachner, 706 F.2d at 1126 n.6 ("'One of the main rights attaching to property is the right to exclude others. . .and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.'")(quoting Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978)). The Court does not find, however, that Plaintiffs demonstrated how Defendant City invaded Plaintiffs' reasonable expectation of privacy. Indeed, Plaintiff Youngblood even provided that there was an "unlawful attempt to search" by Defendant Health Department, but there was not a reference to Defendant City (Dkt. 86, Exhibit 13, Deposition of Plaintiff Youngblood on Sept. 20, 2005 at 68). Having found Plaintiffs failed to establish these requirements against Defendant City, summary judgment in all respects as to Count VI is appropriate in favor of Defendant City.

**iv.    Count VII**

As to Plaintiffs' claim regarding invasion of privacy under the Florida Constitution (Count

VII), Defendant City argues Plaintiffs cannot circumvent applicable search and seizure law by bringing such a claim. Defendant City highlights that Florida's "constitutional right of privacy does not modify the search and seizure provisions of article 1, § 12 of the Florida Constitution." State v. Dean, 639 So.2d 1009, 1012 (Fla. 4th DCA 1994)(internal citations omitted). See State v. Jimeno, 588 So.2d 233, 233 (Fla. 1991)(noting that Florida courts must construe "Fourth Amendment issues in conformity with rulings of the United States Supreme Court."). Defendant City contends that to the extent Plaintiffs are claiming the issuance of the Notice to Appear citation violated their privacy rights, such a contention is misplaced. Additionally, Defendant City asserts that because Article 1, § 23 of the Florida Constitution provides only individuals have a right to privacy, the Court should dismiss Plaintiff First Conservative Baptist Church's claim as it is not viable.

The Court agrees with Defendant City as Plaintiffs have not demonstrated the existence of a genuine issue of material fact as to the claim their privacy rights were violated. Furthermore, the Court does not find declaratory or injunctive relief to be proper. Accordingly, summary judgment in all respects as to Count VII for Defendant City is proper.

### v.    Count VIII

Defendant City argues Plaintiffs' claim under the Florida Religious Freedom Restoration Act of 1998 ("FRFRA")(Count VIII), fails. Specifically, that under the FRFRA, government regulations which "substantially burden" a person's exercise of religion are subject to strict scrutiny. Warner, 887 So.2d at 1033. A "substantial burden. . .is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." Id. at 1033. According to Defendant City, Plaintiffs have failed to establish such a burden. Plaintiffs respond, however, that the option of closing the church and school in order to avoid

33

inspections creates such a substantial burden and that Plaintiffs "are currently considering closing the school to avoid the unlawful entry into the church's property." (Dkt. 93 at 13). Plaintiffs contend that the FRFA requires that even a law of general applicability is subject to strict scrutiny if it substantially burdens the free exercise of religion. Id. (citing Warner, 420 F.3d at 1309).

The Court initially recognizes that the "FRFRA requires any Florida law-even a neutral law of general applicability- to be subject to strict scrutiny if that law substantially burdens the free exercise of religion." Warner, 420 F.3d at 1309-10 (internal citations omitted). The Court does not find, however, that such a substantial burden exists. The only evidence in the record related to this claim is the alleged statement by Plaintiff Youngblood to Defendant Dobson that "we would close the church and school before we would allow entry into the church's private property without a warrant." Defendant Dobson allegedly responded that to avoid inspections, Plaintiffs should close the church and school (Plaintiffs' Exhibit 12, Affidavit of Plaintiff Youngblood at 7). The Court does not find the attempted enforcement of the Policy, or of Florida Statute § 381.0025(2) to create such a substantial burden as to be violative of the FRFRA. Carrying this logic forward, the Court does not find Plaintiffs are entitled to declaratory or injunctive relief. Summary Judgment for Defendant City is therefore proper in all respects as to Count VIII.

### vi.     Count IX

Defendant City contends Plaintiffs' claim of Negligent Supervision and Retention (Count IX) is barred because Plaintiffs have not properly alleged compliance with Florida Statute § 768.28(6). This statute provides a waiver of sovereign immunity on behalf of the State of Florida and its agencies in tort actions, but requires that a complainant present a claim in writing to the Florida Department of Financial Services within three years after such claim accrues. Upon

receiving a denial from the Department of Financial Services, the complainant can then institute an action in court. <u>Walker v. Florida Dept. of Law Enforcement</u>, 2003 WL 21180103, *1 (Fla. 3rd DCA 2003). As Count IX alleges negligence against the Defendant City, Plaintiffs must plead compliance with § 768.28(6). Defendant City contends it has not been able to locate records of such compliance and that Plaintiffs have failed to plead compliance. The Court finds because Plaintiffs have failed to demonstrate compliance with § 768.28(6), as well as not articulating any arguments against summary judgment, the Court finds summary judgment to be appropriate.

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED**:

1. Defendant Health Department's Motion for Summary Judgment (Dkt. 82) is **GRANTED**.

2. Defendants City of Jacksonville, Boyd, Butler and Perrett's Motion for Summary Judgment (Dkt. 86) is **GRANTED**.

3. Defendants Sliva, Dobson and Nowlin's Motion for Summary Judgment (Dkt. 81) is **GRANTED**.

4. The Clerk of the Court is directed to enter final judgment for the Defendants.

**DONE AND ORDERED**, at Jacksonville, Florida, this __6th__ day of February, 2006.

Copies to:        Counsel of record

JOHN H. MOORE II
United States District Judge